UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RBR GLOBAL, LLC and VISCONTI MORTGAGE COMPANY, LLC,<br><br>                                    Plaintiffs,<br><br>                    v.<br><br>BFG 108, LLC, BANANA MARKETPLACE LLC, d/b/a BANANA FUNDING GROUP, HIGHMORE GROUP ADVISORS LLC, DIPAK JOGIA, HARNEY PARTNERS LLC, TIM MONAHAN, and TEXAS FIRST CAPITAL FUND I, INC.,<br><br>                                    Defendants. | CIVIL ACTION NO.: 25 Civ. 8381 (JPC) (SLC)<br><br>**OPINION & ORDER** |

**SARAH L. CAVE**, United States Magistrate Judge.

## I. INTRODUCTION

In this action arising from an alleged breach of a contract involving merchant cash advances, Defendants BFG 108, LLC ("BFG"), Banana Marketplace LLC d/b/a Banana Funding Group ("Banana"), Highmore Group Advisors, LLC, and Dipak Jogia (together, "Moving Defendants"),[1] seek leave pursuant to Federal Rules of Civil Procedure 13 and 14 to (i) assert a counterclaim against Plaintiff RBR Global, LLC ("RBR"), and (ii) file a third-party complaint against Richard Dibiase ("Mr. Dibiase") and Raymond Carapella ("Mr. Carapella") (together, "Third Party Defendants"). (Dkt. No. 68 (the "Request")). RBR opposes the Request. (Dkt. No. 69). For the reasons set forth below, the Request is GRANTED.

## II. BACKGROUND

---

[1] Defendants Harney Partners LLC and Tim Monahan do not join in the Request. This action is stayed as to Defendant Texas First Capital Fund I, Inc. ("TFCF"). (Dkt. No. 45).

### A. **Factual Background**[2]

RBR is a provider of merchant cash advances ("MCA"), which enters into merchant cash advance agreements ("MCAAs") with businesses who sell to RBR a percentage of their future account receivables in exchange for a negotiated purchase price.  (Dkt. No. 11 ¶ 13).  An MCA is not deemed to be a loan — and therefore not subject to prohibitions against usury — as long as the MCAA:  (i) contains a reconciliation provision that permits the business to reconcile payments to more closely reflect actual receivables and receive a refund of over-collected amounts; (ii) does not have a finite duration and can be extended if the receivables are delayed; and (iii) does not provide that bankruptcy  would constitute an event of default.  (Id. ¶ 16).

BFG and Banana, under the trade name "Banana Exchange," factor accounts receivable[3] from commercial entities, like RBR, who use that funding to purchase accounts receivable from "smaller companies that have an immediate need for liquidity."  (Dkt. No. 68-1 ¶ 6; see Dkt. No. 11 ¶¶ 21–23).  RBR alleges that BFG and Banana describe their agreements with MCA funders as purchases of receivables as "window dressing" to avoid usury laws when in fact those agreements are "loans with absolute or static repayment obligations."  (Dkt. No. 11 ¶¶ 24–26).

On April 26, 2021, RBR and BFG executed a Master Funding Agreement (the "MFA"), which contains the provisions for the parties' purchase and sale agreements with each other.

---

[2] The factual summary derives from the First Amended Complaint (the "FAC" (Dkt. No. 11)), the proposed counterclaims (the "Proposed CCs" (Dkt. No. 68-1)), and the proposed third-party complaint (the "Proposed TPC" (Dkt. No. 68-2)), the allegations of which we presume as true solely for purposes of analyzing the Request.

[3] A factoring agreement involves the purchase of accounts receivable by advancing a percentage of the face value in exchange for periodic payments of the amounts due on the accounts, less fees and expenses. See generally Dessert Beauty, Inc. v. Platinum Funding Corp., No. 06 Civ. 2279 (SAS), 2006 WL 3780902, at *1 (S.D.N.Y. Dec. 26, 2006).

(Dkt. Nos. 11 ¶ 29; 11-1; 68-1 ¶ 7).  In connection with the MFA, RBR agreed to provide BFG with written notice of any change in its corporate structure.  (Dkt. No. 68-1 ¶¶ 8, 14).  Mr. Dibiase, RBR's sole member, and Mr. Carapella, a member of Plaintiff Visconti Mortgage Company, LLC ("VMC"), executed "personal performance guaranties" such that they could be liable to Moving Defendants in the event of the bankruptcy of RBR or a third-party merchant.  (Dkt. No. 11 ¶¶ 28, 34, 44).  On or about October 29, 2021, RBR, without notice to BFG, sold its "ownership/equity" to RBR Global Inc., a Nevada corporation.  (Dkt. No. 68-1 ¶¶ 13–14).

RBR and BFG subsequently entered into 34 purchase and sales agreements (the "PSAs"), pursuant to which BFG, in exchange for "rights to receive" ("RTRs"), provided financing to RBR, who used the funds to purchase merchant accounts receivable and pay BFG back over time with funds received from the third-party merchants.  (Dkt. Nos. 11 ¶ 30; 11-2; see Dkt. No. 68-1 ¶¶ 9-12).  Although the MFA disclaims characterization as a loan, RBR alleges that the MFA and the PSAs, were, in fact, "criminally usurious loans."  (Dkt. No. 11 ¶¶ 31–36, 45).

The parties' business relationship "proceeded without incident or issue until in or about January 9, 2023[,]" before which date RBR "never missed an installment payment[,]" and "never failed or refused to timely and fully make a required payment, or otherwise perform as required by the MFA or [the PSAs]."  (Dkt. No. 11 ¶¶ 52–53).  On February 19, 2024, RBR assigned to VMC the right to collect under 216 of its MCAAs a receivable balance of $12,880,273.17, none of which derived from a PSA between RBR and BFG or Banana.  (Dkt. No. 11 ¶ 54 (the "VMC MCAA Collection Accounts")).

Nevertheless, RBR alleges that Defendants attempted to pursue collection of receivables from RBR's MCAA accounts that were not identified in the PSAs, including the VMC MCAA

3

Collection Accounts.  (Dkt. No. 11 ¶¶ 56–58).  At one point in March 2024, Defendants claimed that RBR was in default and owed over $7.4 million.  (Dkt. No. 11 ¶ 60).  RBR contends that Defendants have "over-collected at least $15,000,000.00 on merchants that defaulted or failed to perform on their underlying MCAA's[,]" without properly crediting RBR for its share of the RTR purchased under the PSAs.  (Dkt. No. 11 ¶ 65).

### B.  Procedural Background

#### 1.  The Oklahoma Action

On January 30, 2025, TFCF, "as authorized servicing agent for" BFG, filed in the United States District Court for the Westen District of Oklahoma an action against RBR, Mr. Dibiase, and Mr. Carapella, asserting claims for breach of contract, guarantor liability, quantum meruit, promissory estoppel, fraud, and conversion.  (Texas First Cap. Funding I Inc. v. RBR Global LLC, No. 25 Civ. 82 (PRW) (W.D. Okla.) (the "Oklahoma Action"), Dkt. No. 5).  Essentially, TFCF alleged that RBR had breached the MFA and the PSAs by failing to pay BFG amounts due under those agreements, failing to obtain proper licenses to do business, and failing to disclose management and ownership changes, and sought damages of nearly $7 million.  (Id. ¶¶ 20, 48).

On March 5, 2026, the Honorable Patrick R. Wyrick, United States District Judge for the Western District of Oklahoma, granted motions to dismiss the Oklahoma Action without prejudice because the court was unable to exercise general or specific personal jurisdiction over RBR, Mr. Dibiase, or Mr. Carapella.  (Oklahoma Action, Dkt. Nos. 34 (the "Dismissal Order"); 35).

#### 2.  This Action

On October 9, 2025, RBR filed this action, and on October 28, 2025, before Defendants had been served, filed the FAC, which asserts claims for breach of contract, breach of the

4

covenant of good faith and fair dealing, violation of New York General Business Law §§ 349–50, fraud, unjust enrichment, conversion, tortious interference with contract, tortious interference with prospective economic advantage, bad faith disposal of collateral, negligence, negligent misrepresentation, and an accounting.  (Dkt. No. 11).  In December 2025 and January 2026, Defendants filed answers to the FAC.  (Dkt. Nos. 41; 42; 43; 46).  On February 18, 2026, following an initial case management conference, the Court entered a case management plan setting, inter alia, a discovery deadline of November 16, 2026.  (Dkt. No. 54 (the "CMP")).

In February 2026, Moving Defendants sought leave to file a motion to stay and transfer venue of this action to the Western District of Oklahoma, for which the Court set a briefing schedule.  (Dkt. Nos. 50; 53; 55).  On February 24, 2026, Moving Defendants filed a motion to stay and transfer this action, (Dkt. Nos. 56–58 (the "Transfer Motion")), which RBR opposed.  (Dkt. No. 59).  On March 25, 2026, after Judge Wyrick entered the Dismissal Order, Moving Defendants withdrew the Transfer Motion.  (Dkt. Nos. 62–63).

On April 25, 2026, Moving Defendants filed the Request, with the Proposed CCs and Proposed TPC, (Dkt. Nos. 68; 68-1; 68-2), which RBR opposed.  (Dkt. No. 69).  Judge Cronan has referred the Request to the undersigned.  (Dkt. No. 72).

After RBR filed a letter raising various discovery disputes, on May 12, 2026, the Court held a discovery conference, following which it set another discovery status conference for June 5, 2026.  (Dkt. Nos. 71; 74; 75; 76; Dkt. entry dated May 12, 2026).

### III. DISCUSSION

**A. The Proposed CCs**

**1. Legal Standards**

"Under Federal Rule of Civil Procedure 15(a)(2), after the expiration of the period in which a party may amend its pleading as a matter of course, the party may amend its pleading 'only with the opposing party's written consent or the court's leave.'" Harleysville Worcester Ins. Co. v. Consigli & Assocs., LLC, No. 21 Civ. 934 (PAE), 2023 WL 4684652, at *4 (S.D.N.Y. July 21, 2023) (quoting Fed. R. Civ. P. 15(a)(2)).[4] A "court should freely give leave when justice so requires[,]" Fed. R. Civ. 15(a)(2), and in the absence of countervailing factors such as bad faith, undue delay, prejudice to the opposing party, or futility of the amendment. See Foman v. Davis, 371 U.S. 178, 182 (1962). "[E]ven where such factors are present, the rule in this Circuit has been to allow a party to amend its pleading in the absence of . . . prejudice or bad faith." Harleysville Worcester Ins. Co., 2023 WL 4684652, at *4. "Delay alone is usually not a sufficient reason for denying a motion to amend." Id. A court may deny leave to amend "where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice other parties, or where the belated motion would unduly delay the court of proceedings by, for example, introducing new issues for discovery." State Farm Ins. Cos. v. Kop-Coat, Inc., 183 F. App'x 36, 37–38 (2d Cir. 2006). The non-moving party bears the burden to show prejudice from the amendment. Harleysville Worcester Ins. Co., 2023 WL 4684652, at *4.

As to proposed counterclaims, under Federal Rule of Civil Procedure Rule 13(e), the "court may permit a party to file a supplemental pleading asserting a counterclaim that matured

---

[4] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

6

or was acquired by the party after serving an earlier pleading." Fed. R. Civ. P. 13(e). Rule 13(a)(1) provides that "[a] pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1). "[A] new counterclaim, like all pleadings, must conform to the requirements of" Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009). GEOMC Co., Ltd. v. Calmare Therapeutics Inc., 918 F.3d 92, 99 (2d Cir. 2018). "Amendments to add counterclaims are governed by the general amendment standard in Rule 15(a)(2)[]" set forth above. Harleysville Worcester Ins. Co., 2023 WL 4684652, at *4.

## 2. Application

Moving Defendants assert that they "have acted in good faith" and did not "unduly delay[]" filing the Proposed CCs, which they could not file until Judge Wyrick issued the Dismissal Order. (Dkt. No. 68 at 2). They add that "no party will be prejudiced" because RBR, Mr. Dibiase, and Mr. Carapella were already on notice of similar claims in the Oklahoma Action and that "the scope of discovery will not change" if the Proposed CCs are permitted. (Id.) RBR opposes the Request on the grounds that Moving Defendants improperly delayed asserting the Proposed CCs, that it will be prejudiced by the need to "re-open[] and re-scop[e]" discovery in light of the Proposed CCs, and that Moving Defendants are attempting to gain "tactical leverage by complicating and delaying these proceedings." (Dkt. No. 69 at 2). RBR does not contend that the Proposed CCs are unrelated to RBR's claims in the FAC or are futile. (See id.)

Construing the Proposed CCs in the light most favorable to Moving Defendants, see Northwestern Nat'l Ins. Co. of Milwaukee, Wis. v. Alberts, 717 F. Supp. 148, 153 (S.D.N.Y. 1989), and applying the "liberal" and "permissive" standard for leave to amend, Harleysville Worcester Ins. Co., 2023 WL 4684652, at *4, we grant the Request to add the Proposed CCs.  First, as we note above, it is undisputed that the Proposed CCs arise out of the same "transaction or occurrence that is the subject of" RBR's FAC, and RBR does not contend that the Proposed CCs would be futile.  Fed. R. Civ. P. 13(a)(1).  Second, Moving Defendants did not unduly delay the Request, which they filed about six weeks after Judge Wyrick entered the Dismissal Order, and about a month after withdrawing the Transfer Motion.  (Dkt. Nos. 62–63; 68; see Oklahoma Action, Dkt. Nos. 34–35).  The Proposed CCs arrived relatively early in the discovery period, which does not end until November 16, 2026.  (See Dkt. No. 54).  While Moving Defendants could have moved a bit more quickly after the Dismissal Order, we cannot say that they have unduly delayed the Request.  Second, given that Mr. Dibiase is RBR's sole member, and Mr. Carapella is a member of VMC, (Dkt. No. 11 ¶¶ 4–5), Moving Defendants would likely have been seeking discovery from them in any event, so the Proposed CCs do not materially expand the scope of discovery and RBR has failed to meet its burden of showing prejudice.  See Harleysville Worcester Ins. Co., 2023 WL 4684652, at *4.  Finally, we find it somewhat hypocritical for RBR to suggest that the Proposed CCs are a "transparent litigation tactic[,]" (Dkt. No. 69 at 2), when RBR filed this action while the Oklahoma Action, which RBR does not dispute arises from the MFA and the PSAs, was already pending.

Accordingly, in exercising the discretion granted under Rules 13 and 15, we grant the Request to add the Proposed CCs.

### B.  The Proposed TPC

#### 1.  Legal Standard

Federal Rule of Civil Procedure 14(a)(1) requires a party to seek leave of court if it seeks to file a third-party complaint more than fourteen days after serving its original answer.  Fed. R. Civ. P. 14(a)(1).  "In determining whether to grant leave to implead," the term for bringing new claims against new parties into an action, "a court should consider the following factors: '(i) whether the movant deliberately delayed or was derelict in filing the motion; (ii) whether impleading would unduly delay or complicate the trial; (iii) whether impleading would prejudice the third-party defendant; and (iv) whether the third-party complaint states a claim upon which relief can be granted.'"  Wilder v. Credit One Bank, N.A., No. 25 Civ. 6264 (JMF), 2026 WL 880500, at *1 (S.D.N.Y. Mar. 31, 2026).  "The decision whether to permit a defendant to implead a third-party defendant rests in the trial court's discretion."  Kenneth Leventhal & Co. v. Joyner Wholesale Co., 736 F.2d 29, 31 (2d Cir. 1984).

#### 2.  Application

As with the Proposed CCs, Moving Defendants argue that the Proposed TPC will not prejudice any party or cause undue delay, that discovery is in its early stages, and that adding Mr. Dibiase and Mr. Carapella will "conserve resources and promote judicial efficiency by 'eliminating duplicative actions[.]'"  (Dkt. No. 68 at 3).  Without support from any authority, RBR makes the conclusory counterarguments that Moving Defendants have failed to show that the claims in the Proposed TPC are derivative of RBR's claims in the FAC and that allowing the Proposed TPC will delay adjudication of the claims in the FAC.  (Dkt. No. 69 at 3).

Again, we find RBR's opposition to the Proposed TPC insufficient to defeat the Request. In the FAC, RBR acknowledges that Mr. Dibiase and Mr. Carapella provided "personal performance guaranties[,]" such that they could be liable to Moving Defendants in the event of the bankruptcy of RBR or a third-party merchant.  (Dkt. No. 11 ¶¶ 28, 34, 44).  See generally Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc., No. 03 Civ. 6731 (HB), et al., 2006 WL 726226, at *1 (S.D.N.Y. Mar. 23, 2006) (explaining that "guarantor is immediately bound and liable when the principal debtor defaults on the contract").  There remains plenty of time in the discovery period — if the parties use it wisely — for Moving Defendants to serve discovery requests, and for Mr. Dibiase and Mr. Carapella to respond thereto.  (See Dkt. No. 54).  Finally, given their opposition to the claims in the Oklahoma Action (See Oklahoma Action, Dkt. Nos. 34–35), and RBR's allegations about them in the FAC (Dkt. No. 11 ¶¶ 28, 34, 44), Mr. Dibiase and Mr. Carapella have been aware of their potential exposure to liability arising from the guaranties they executed, and therefore, will not suffer any prejudice from the Proposed TPC.

Accordingly, we exercise our discretion to grant the Request to file the Proposed TPC.

### IV. CONCLUSION

For the reasons set forth above, the Request is GRANTED.  By **Tuesday, May 26, 2026**, Moving Defendants shall file the Proposed CCs and the Proposed TPC and by **Monday, June 1, 2026**, file proof of service on Plaintiffs and Third Party Defendants.

Dated:    New York, New York
          May 18, 2026

_____
SARAH L. CAVE
**United States Magistrate Judge**

10