UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RBR GLOBAL, LLC and VISCONTI MORTGAGE COMPANY, LLC,

Plaintiffs,

v.

BFG 108, LLC, BANANA MARKETPLACE LLC, d/b/a BANANA FUNDING GROUP, HIGHMORE GROUP ADVISORS LLC, DIPAK JOGIA, HARNEY PARTNERS LLC, TIM MONAHAN, and TEXAS FIRST CAPITAL FUND I, INC.,

Defendants.

CIVIL ACTION NO.: 25 Civ. 8381 (JPC) (SLC)

**OPINION & ORDER**

**SARAH L. CAVE**, United States Magistrate Judge.

## I. INTRODUCTION

In this action arising from an alleged breach of a contract involving merchant cash advances, Plaintiffs RBR Global LLC and Visconti Mortgage Company, LLC ("Plaintiffs") dispute the privilege assertions by (i) Defendants Harney Partners LLC ("Harney") and Tim Monahan ("Monahan," together, the "H&M Defendants"), and (ii) Defendants BFG 108, LLC ("BFG"), Banana Marketplace LLC d/b/a Banana Funding Group ("Banana"), Highmore Group Advisors, LLC ("Highmore"), and Dipak Jogia ("Jogia," and together, the "BFG Defendants"). (Dkt. Nos. 132 ("Plaintiffs' H&M Request"); 133 ("Plaintiffs' BFG Request")).[1] Following two conferences with the parties and an in camera review of 20 exemplars for the H&M Defendants (the "H&M Exemplars") and 16 exemplars for the BFG Defendants (the "BFG Exemplars"), the Court **GRANTS** Plaintiffs' H&M Request and **DENIES** Plaintiffs' BFG Request.

[1] This action is stayed as to Defendant Texas First Capital Fund I, Inc. ("TFCF"). (Dkt. No. 45).

## II. BACKGROUND

We incorporate the factual and procedural background set forth in the prior decisions of the Honorable John P. Cronan and the undersigned. See RBR Glob., LLC v. BFG 108, LLC, No. 25 Civ. 8381 (JPC) (SLC), 2026 WL 2241171 (S.D.N.Y. Aug. 4, 2026) (addressing the BFG Defendants' amended counterclaims) ("RBR IV"); RBR Glob., LLC v. BFG 108, LLC, No. 25 Civ. 8381 (JPC) (SLC), 2026 WL 1384033 (S.D.N.Y. May 18, 2026) ("RBR III") (granting the BFG Defendants' request to assert counterclaim against Plaintiffs and file a third-party complaint); RBR Glob., LLC v. BFG 108, LLC, No. 25 Civ. 8381 (JPC), 2026 WL 205600 (S.D.N.Y. Jan. 27, 2026) ("RBR II") (granting stay as to TFCF); RBR Glob., LLC v. BFG 108, LLC, No. 25 Civ. 8381 (JPC), 2025 WL 3679237 (S.D.N.Y. Dec. 18, 2025) (setting deadlines for responses to Amended Complaint). We set forth only the additional background necessary to analyze the parties' privilege disputes.

### 1. The H&M Exemplars

The H&M Defendants contend that each of the H&M Exemplars is "protected by the attorney-client privilege, the work-product doctrine, or both." (Dkt. No. 138 at 1). Monahan was "Highmore's financial advisor for" BFG's liquidation, so the H&M Defendants contend that Monahan "acted as the functional equivalent of a Highmore employee for privilege purposes." (Id.) In response to Plaintiffs' H&M Request, the H&M Defendants have submitted a letter to which they attach: (1) a March 4, 2024 letter from Harney to Highmore setting forth the terms of Harney's provision of advisory services to Highmore (Dkt. No. 138-1 (the "Harney Agreement")), and (2) the H&M Defendants' privilege log. (Dkt. No. 138-2 (the "H&M Log")). The H&M Defendants have not submitted declarations from Monahan, Highmore, or anyone else. (See Dkt. No. 138).

The Harney Engagement Letter contemplates that Harney, i.e., Monahan, would provide the following advisory services to Highmore: (i) overseeing the liquidation of BFG's assets; (ii) managing liquidation costs and expenses; (iii) working with BFG personnel to maximize collection of BFG merchant cash advance ("MCA") lender loans; (iv) recommending BFG staffing or compensation changes; (v) reviewing and analyzing BFG's reporting, compliance, and financial packages; (vi) reviewing cash flow forecasting models; (vii) reviewing BFG's accounting controls; and (viii) other duties as agreed (collectively, the "Services"). (Dkt. No. 138-1).

The H&M Defendants group the H&M Exemplars into four categories:

**a. Commercial Transactions and Collection Operations**[2]

The H&M Defendants assert that these exemplars represent communications between Monahan, the BFG Defendants, and Highmore's outside counsel, Golenbock Eiseman Assor Bell & Peskoe LLP ("Golenbock"), for the purpose of obtaining "legal advice on merchant-collection strategy." (Dkt. No. 138 at 2). The H&M Defendants contend that "Monahan managed merchant collections and coordinated with Highmore's principals, collection counsel, and agents[,]" so Highmore included Monahan in correspondence with Golenbock "because he was likely to possess information no one else at Highmore possessed." (Id.) The H&M Defendants also contend that Monahan communicated directly with BFG employees and third parties and sought legal advice from Golenbock "to guide his work for Highmore." (Id.)

Plaintiffs respond that the H&M Defendants' descriptions of these exemplars "do not establish that the communications primarily sought or conveyed [legal] advice rather than business instructions, negotiating positions, or operational decisions." (Dkt. No. 132 at 2).

[2] Exemplars 002287, 003113, 006267, 007889, and 009604. (Dkt. No. 138 at 2).

**b. Forwarded Advice and Communications Among Nonlawyers**[3]

The H&M Defendants contend that these exemplars represent communications "among Defendants discussing legal advice and work product from Golenbock and Anderson Jones, counsel retained to advise on the same merchant collections" that Monahan managed. (Dkt. No. 138 at 2). The H&M Defendants do not specify who retained Anderson Jones, however. (See id.) The H&M Defendants reassert that because Monahan was the functional equivalent of a Highmore employee, "communications relaying counsel's advice, or working to gather information for counsel, remain privileged." (Id. at 2).

Plaintiffs respond that the senders and recipients on these exemplars "do not themselves include counsel," and the H&M Defendants have not established that each communication "conveyed protected advice and that every recipient was within the protected relationship or a qualifying common legal enterprise." (Dkt. No. 132 at 2).

**c. Distribution to Collection Vendors and Multiple Entities**[4]

These exemplars are communications between the BFG Defendants, two additional law firms — the Law Offices of Steven Zakharayev ("Zakharayev") and Keith Weir Law ("Weir") — and agents those law firms hired, Empire Recovery and Goldberg Hedge Funds (together, the "Agents"), respectively. (Dkt. No. 138 at 2–3). The H&M Defendants assert that Zakharayev and Weir included the Agents in the communications "to assist in delivering legal services, so their presence did not waive the privilege." (Id. at 3 (citing Ensor v. Chipotle Mexican Grill, Inc., 103 F. Supp. 3d 542, 546 (S.D.N.Y. 2015))).

[3] Exemplars 002511, 002572, 002915, 003316, 003050, 009740, and 010141. (Dkt. No. 138 at 2).
[4] Exemplars 005149, 007712, and 008916. (Dkt. No. 138 at 2).

Plaintiffs contend that the H&M Defendants have failed to "identify each recipient's capacity, represented entity, and confidentiality obligations[.]" (Dkt. No. 132 at 2).

**d. Anticipated Litigation and Court Filings**[5]

The H&M Defendants appear to assert that these two exemplars contain attorney work product because they reflect analysis of potential claims against Plaintiffs and draft court documents. (Dkt. No. 138 at 3). They contend that Monahan's "interests were aligned with Highmore's" so copying him on these communications did not waive the work product protection. (Id.)

Plaintiffs counter that the H&M Defendants have failed to identify how these exemplars reflect "actual protected advice or litigation preparation" as opposed to communications "in the ordinary course of collections or business." (Dkt. No. 132 at 2).

**2. The BFG Exemplars**

Plaintiffs have identified 20 documents that the BFG Defendants withheld as protected by the attorney-client privilege, as to four of which the BFG Defendants withdrew the assertion of privilege, leaving 16 exemplars. (See Dkt. No. 141 at 2 (the "BFG Exemplars")). The BFG Defendants assert that the BFG Exemplars show them seeking legal advice concerning their relationship with Plaintiffs and collection of defaulted accounts. (Id.) The BFG Defendants have not submitted any declarations or other evidence in support of their privilege assertion but have provided an updated privilege log (the "BFG Log"). (Dkt. No. 141-1).

[5] Exemplars 007552 and 010883. (Dkt. No. 138 at 3).

## III. DISCUSSION

### A. Legal Standards

#### 1. Attorney-Client Privilege

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." Upjohn Co. v. U.S., 449 U.S. 383, 389 (1981). Under federal law, the attorney-client privilege applies only if all the following are met:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 441 (S.D.N.Y. 1995) (quoting United States v. United Shoe Mach. Corp., 89 F. Supp. 357, 358–59 (D. Mass. 1950)). Under New York law, for the privilege to apply, the communication must have been made "for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship." Spectrum Sys. Int'l Corp. v. Chem. Bank, 78 N.Y.2d 371, 377–78 (1991). The communication must also "be primarily or predominantly of a legal character." Id. at 378. In evaluating whether the privilege applies, the "critical inquiry" is "whether, viewing the lawyer's communication in its full content and context, it was made in order to render legal advice or services to the client." Id. at 379.

The party invoking the attorney-client privilege bears the burden of demonstrating that the privilege applies. See In re Grand Jury Proc., 219 F.3d 175, 182 (2d Cir. 2000) ("In re Grand

Jury I"); Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 470–71 (S.D.N.Y. 1993); Spectrum, 78 N.Y.2d at 377. To meet this burden, the party asserting the attorney-client privilege must show that the communications were "(1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal assistance." Brennan Ctr. for Just. at N.Y. Univ. Sch. of L. v. U.S. Dep't of Just., 697 F.3d 184, 207 (2d Cir. 2012). "Any ambiguities as to whether the essential elements have been met are construed against the party asserting the privilege." Koumoulis v. Indep. Fin. Mktg. Grp., Inc., 295 F.R.D. 28, 38 (E.D.N.Y. 2013), aff'd, 29 F. Supp. 3d 142 (E.D.N.Y. 2014). As this Court has explained, "the privilege attaches not only to communications by the client to the attorney, but also to advice rendered by the attorney to the client, at least to the extent that such advice may reflect confidential information conveyed by the client." In re Keurig Green Mt. Single-Serve Coffee Antitrust Litig., No. 14 MD. 2542 (VSB) (SLC), 2020 WL 8465433, at *2 (S.D.N.Y. Oct. 30, 2020) (quoting Bank Brussels, 160 F.R.D. at 441–42). The mere fact, however, that a document was transmitted between an attorney and a client does not render the document privileged. See Dep't of Econ. Dev. v. Arthur Anderson & Co. (U.S.A.), 139 F.R.D. 295, 300 (S.D.N.Y. 1991). Rather, it "must contain confidential communication relating to legal advice." Id.; see Renner v. Chase Manhattan Bank, No. 98 Civ. 926 (CSH), 2001 WL 1356192, at *1 (S.D.N.Y. Nov. 2, 2001) (rejecting argument that "any reference to any communication between [a client] and one of his attorneys on any document shields that entire document from disclosure, whether or not the document reveals communications made by [the client] to his attorneys in confidence and for the purpose of obtaining legal advice").

Because in-house lawyers often perform both legal and business functions, "communications between a corporation's employees and its in-house counsel, though subject to the attorney-client privilege, must be scrutinized carefully to determine whether the predominant purpose of the communication was to convey business advice and information or, alternatively, to obtain or provide legal advice[,]" with only the latter being protected by the attorney-client privilege. Brown v. Barnes & Noble, Inc., 474 F. Supp. 3d 637, 648 (S.D.N.Y. 2019), aff'd, 2020 WL 5037573 (S.D.N.Y. Aug. 26, 2020). "The privilege . . . attaches only if 'the predominant purpose of the communication is to render or solicit legal advice.'" Tower 570 Co. LP v. Affiliated FM Ins. Co., No. 20 Civ. 799 (JMF), 2021 WL 1222438, at *2 (S.D.N.Y. Apr. 1, 2021) (quoting Pritchard v. Cnty. of Erie (In re Cnty. of Erie), 473 F.3d 413, 420 (2d Cir. 2007)). Therefore, a document that is "predominantly a business communication is not protected merely because it involved legal considerations and counsel was copied." Tower 570, 2021 WL 1222438, at *2; see Mazzocchi v. Windsor Owners Corp., No. 11 Civ. 7913 (RA) (SDA), 2020 WL 4038342, at *1 (S.D.N.Y. July 17, 2020) ("[Merely] including an attorney . . . as a 'cc' to [] emails does not make the communications privileged."); LPD N.Y., LLC v. Adidas Am., Inc., No. 15 Civ. 6360 (MKB), 2018 WL 6437078, at *5 (E.D.N.Y. Dec. 7, 2018) ("That attorneys were copied on communications between business personnel does not, by itself, entitle the communications to protection."). The privilege does, however, "'protect[] from disclosure communications among corporate employees that reflect advice rendered by counsel to the corporation,' and thus 'the dissemination of confidential communications to [the corporation's employees] does not defeat the privilege.'" In re Keurig, 2020 WL 8465433, at *2 (quoting Bank Brussels, 160 F.R.D. at 442).

"The attorney-client privilege was designed 'to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and [the] administration of justice.'" TVT Recs. v. Island Def Jam Music Grp., 214 F.R.D. 143, 144 (S.D.N.Y. 2003) (quoting Upjohn, 449 U.S. at 389). "Because the privilege 'stands in derogation of the public's right to every [person]'s evidence . . . it ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle.'" TVT Recs., 214 F.R.D. at 144 (quoting In re Grand Jury I, 219 F.3d at 182); see Brown, 474 F. Supp. 3d at 648 ("The privilege is narrowly construed because it renders relevant information undiscoverable."); accord Coventry Cap. US LLC v. EEA Life Settlements Inc., No. 17 Civ. 7417 (VM) (SLC), 2021 WL 4312026, at *3 (S.D.N.Y. Sept. 22, 2021).

Finally, "[i]t is well-established that the attorney-client privilege is waived if the holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the communication to a third party or stranger to the attorney-client relationship." Denney v. Jenkens & Gilchrist, 362 F. Supp. 2d 407, 412 (S.D.N.Y. 2004). Thus, the party invoking the attorney-client privilege must also show "'that the communications between client and attorney were made in confidence and have been maintained in confidence.'" Id. (quoting In re Horowitz, 482 F.2d 72, 81–82 (2d Cir. 1973)).

**a. Common Interest Doctrine**

The common interest doctrine "is not a separate privilege but 'an extension of the attorney client privilege.'" Gulf Is. Leasing, Inc. v. Bombardier Cap., Inc., 215 F.R.D. 466, 470 (S.D.N.Y. 2003) (quoting United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989)). It is "an exception to the general rule that voluntary disclosure of confidential, privileged material to a

third party waives any applicable privilege." Sokol v. Wyeth, Inc., No. 07 Civ. 8442 (SHS) (KNF), 2008 WL 3166662, at *5 (S.D.N.Y. Aug. 4, 2008). "The common interest doctrine precludes a waiver of the underlying privilege concerning confidential communications between the parties 'made in the course of an ongoing common enterprise and intended to further the enterprise,' irrespective of whether an actual litigation is in progress." Id. (quoting Schwimmer, 892 F.2d at 243). The doctrine "is intended to allow clients to share information with an attorney for another party who shares the same legal interest." Gulf Is., 215 F.R.D. at 471; see SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props. LLC, No. 01 Civ. 9291 (JSM), 2002 WL 1334821, at *3 (S.D.N.Y. June 19, 2002) ("The purpose of the common interest privilege is to permit a client to share confidential information with the attorney for another who shares a common legal interest."). The doctrine therefore "protect[s] the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." Schwimmer, 892 F.2d at 243.

The party invoking the common interest doctrine bears the burden of "demonstrat[ing] that the parties communicating: (1) have a common legal, rather than commercial, interest; and (2) the disclosures are made in the course of formulating a common legal strategy." Sokol, 2008 WL 3166662, at *5; see Bank Brussels, 160 F.R.D. at 447 (explaining that "the doctrine applies where parties are represented by separate counsel but engage in a common legal enterprise"). Of course, the communication itself must, in the first instance, be protected by the attorney-client privilege or the work product doctrine for the common interest doctrine to apply. See Sokol, 2008 WL 3166662, at *5; Gulf Is., 215 F.R.D. at 470; In re F.T.C., No. 18 MD. 304 (RJW), 2001 WL 396522, at *4 (S.D.N.Y. Apr. 19, 2001). The party invoking the doctrine must make this

showing "based on competent evidence, usually through the admission of affidavits, deposition testimony or other admissible evidence." Gulf Is., 215 F.R.D. at 472; see Bowne, 150 F.R.D. at 472 (rejecting assertion of privilege where party offered no affidavits, "specific deposition testimony or other competent evidence"). The party cannot meet its burden by "'mere conclusory or ipse dixit assertions'" in its counsel's unsworn motion papers. von Bulow by Auersperg v. von Bulow, 811 F.2d 136, 146 (2d Cir. 1987) (quoting In re Bonanno, 344 F.2d 830, 833 (2d Cir. 1965)).

Although, at its core, the doctrine protects communications between multiple clients represented by the same attorney, "the doctrine is not limited to such situations." Denney, 362 F. Supp. 2d at 415. Rather, "the weight of authority is that the common interest doctrine does extend at least to situations 'where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel.'" Bank Brussels, 160 F.R.D. at 447 (quoting Schwimmer, 892 F.2d at 243). "With regard to the 'interest' that must be shown, federal case law has repeatedly held that communications regarding business matters—even where litigation is pending or imminent—do not qualify for protection from discovery under the common interest [doctrine]." Gulf Is., 215 F.R.D. at 471; see In re F.T.C., 2001 WL 396522, at *5 (noting that "courts have recognized that a business strategy which happens to include a concern about litigation is not a ground for invoking the common interest rule"); Walsh v. Northrop Grumman Corp., 165 F.R.D. 16, 18 (E.D.N.Y. 1996) (noting that "[t]he doctrine does not extend to communications about a joint business strategy that happens to include a concern about litigation"). "What is important is not whether the parties theoretically share similar interests but rather whether they demonstrate actual cooperation toward a common legal goal."

In re F.T.C., 2001 WL 396522, at *3. Even then, "[o]nly communications made in the course of an ongoing legal enterprise, and intended to further the enterprise, are protected." Id.

The common interest doctrine "is narrowly construed[,]" Gulf Is., 215 F.R.D. at 471 (collecting cases), and the Second Circuit has cautioned that expansions of the attorney-client privilege under the common interest doctrine should be "cautiously extended." United States v. Weissman, 195 F.3d 96, 100 (2d Cir. 1999); see In re Rivastigmine Pat. Litig., No. 05 MD. 1661 (HB) (JCF), 2005 WL 2319005, at *3 (S.D.N.Y. Sept. 22, 2005) (same), aff'd, 2005 WL 3159665 (S.D.N.Y. Nov. 22, 2005). Under New York law, "the burden of establishing any right to protection is on the party asserting it; the protection claimed must be narrowly construed; and its application must be consistent with the purposes underlying the immunity." Spectrum, 78 N.Y.2d at 377.

**b. The Functional Equivalent Doctrine**

"Under the functional equivalent doctrine, where a consultant serves as a de facto employee of a company, communications between the consultant and the company's lawyers are protected by the attorney-client privilege, and disclosure to the consultant of privileged communications to which the consultant was not a party does not waive the privilege." Walsh v. CSG Ptrs., LLC, 544 F. Supp. 3d 389, 392 (S.D.N.Y. 2021). The rule recognizes that "there is little reason if any 'to distinguish between a person on the corporation's payroll and a consultant hired by the corporation if each acts for the corporation and possesses the information needed by attorneys in rendering legal advice.'" Id. (quoting In re Copper Mkt. Antitrust Litig., 200 F.R.D. 213, 219 (S.D.N.Y. 2001)). The Second Circuit has yet to adopt the doctrine, "and some district courts have expressed skepticism about whether it would do so." Walsh, 544 F. Supp. 3d at 392;

but see, e.g., Bellridge Cap., LP v. EVmo, Inc., No. 21 Civ. 7091 (PGG) (SLC), 2022 WL 17490961, at *5 (S.D.N.Y. Dec. 6, 2022) (finding that defendant's former CEO "was the functional equivalent of an employee who possessed primary responsibility for [negotiation of key agreement] and thus had unique information critical to the issues in this action [about alleged breach of that agreement] such that the attorney-client privilege protect[ed] his communications with" defendant's counsel).

Courts assessing whether a consultant is the functional equivalent of an employee have considered several factors, including:

> (1) whether the consultant had a primary responsibility for a key corporate job; (2) whether the consultant had a continuous and close working relationship with the company's principals on matters critical to the company's position in litigation; (3) whether the consultant is likely to possess information possessed by no one else at the company; (4) whether the consultant exercised independent decision-making on the company's behalf; (5) whether the consultant served as a company representative to third parties; and (6) whether the consultant sought legal advice from corporate counsel to guide his or her work for the company.

Walsh, 544 F. Supp. 3d at 392 (citing, inter alia, In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig., 352 F. Supp. 3d 207, 213 (E.D.N.Y. 2019)); see Bellridge, 2022 WL 17490961, at *4; Exp.-Imp. Bank of the U.S. v. Asia Pulp & Paper Co., 232 F.R.D. 103, 113 (S.D.N.Y. 2005). The proponent of the functional equivalent doctrine "bears the burden of establishing that it applies." Walsh, 544 F. Supp. 3d at 393.

### 2. Work Product Doctrine

"Federal law governs the applicability of the work product doctrine in all actions in federal court." Wultz v. Bank of China Ltd., 304 F.R.D. 384, 393 (S.D.N.Y. 2015). "[D]ocuments and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative" are eligible for work product protection. Fed. R. Civ. P. 26(b)(3)(A). For the

work product doctrine to apply, the party claiming protection bears the burden of establishing "that the material at issue '(1) [is] a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by [its] representative.'" Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am., 341 F.R.D. 10, 13 (S.D.N.Y. 2022) (quoting Allied Irish Banks, P.L.C. v. Bank of Am., N.A., 252 F.R.D. 163, 173 (S.D.N.Y. 2008)). In response to a challenge to the work product protection, the party asserting the protection must "submit evidence, by way of affidavit, deposition testimony or otherwise, establishing only the challenged elements of the applicable privilege or protection, with the ultimate burden of proof resting with the party asserting the privilege or protection." A.I.A. Holdings, S.A. v. Lehman Bros., Inc., No. 97 Civ. 4978 (LMM) (HBP), 2002 WL 31385824, at *6 (S.D.N.Y. Oct. 21, 2002), supplemented by, 2002 WL 31556382 (S.D.N.Y. Nov. 15, 2002); see Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP, No. 03 Civ. 5560 (RMB) (HBP), 2007 WL 473726, at *4 (S.D.N.Y. Feb. 14, 2007) ("The party asserting the protection of the work-product doctrine bears the burden of proof."). The party asserting the protection can meet this burden "only by an evidentiary showing based on competent evidence . . . and [it] cannot be 'discharged by mere conclusory or ipse dixit assertions.'" Bowne, 150 F.R.D. at 470 (quoting von Bulow, 811 F.2d at 146).

Concerning the second prong, "[i]n anticipation of litigation" means that "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." United States v. Adlman, 134 F.3d 1194, 1202 (2d Cir. 1998). "Documents prepared in anticipation of litigation are work product, even when they are also intended to assist in business dealings." Schaeffler v.

United States, 806 F.3d 34, 43 (2d Cir. 2015). But "[d]ocuments prepared in the ordinary course of business, or that would have been created whether or not litigation was anticipated, are not protected by work-product immunity." In re Copper, 200 F.R.D. at 221. A party's "consider[ation of] the possibility of litigation . . . is insufficient to trigger the protection of the work product doctrine[.]" Gucci Am., Inc. v. Guess?, Inc., 271 F.R.D. 58, 75 (S.D.N.Y. 2010); see Kingsway, 2007 WL 473726, at *5 (collecting cases); In re Grand Jury Proc., No. 11 MD. 189, 2001 WL 1167497, at *15 (S.D.N.Y. Oct. 3, 2001) ("In re Grand Jury II") (explaining that "a generalized desire to avoid litigation is insufficient to meet the 'in anticipation of litigation' requirement"). "Rather, the party must have taken 'affirmative steps in anticipation of litigation.'" Brook v. Simon & Ptrs., LLP, No. 17 Civ. 6435 (GBD) (SLC), 2021 WL 5919207, at *4 (S.D.N.Y. Dec. 15, 2021) (quoting Gucci, 271 F.R.D. at 75).

In contrast to the attorney-client privilege, "the protection afforded work product is not waived merely because the material is disclosed to a third party." Bank of Am., N.A. v. Terra Nova Ins. Co., 212 F.R.D. 166, 169 (S.D.N.Y. 2002). A party does, however, "waive[] the work product protection by taking actions inconsistent with . . . its purpose, such as disclosing work product to its adversary, or by placing privileged documents 'at issue' in a litigation[.]" N.Y. Times Co. v. U.S. Dep't of Just., 939 F.3d 479, 494 (2d Cir. 2019). "[C]ourts find that the work-product privilege is waived only if disclosure to the third party 'substantially increases the opportunity for potential adversaries to obtain the information.'" Cellco P'ship d/b/a Verizon Wireless v. Nextel Commc'n, Inc., No. 03 Civ. 725 (KAJ) (RO), 2004 WL 1542259, at *1 (S.D.N.Y. July 9, 2004) (quoting In re Grand Jury Subpoenas Dated Dec. 18, 1981 & Jan. 4, 1982, 561 F. Supp. 1247, 1257 (E.D.N.Y. 1982)).

In addition, failure to furnish an adequate privilege log that complies with Federal Rule of Civil Procedure 26(b)(5) and identifies which privilege is being asserted may also be grounds for finding the protection waived. See Aurora Loan Servs., Inc. v. Posner, Posner & Assocs., P.C., 499 F. Supp. 2d 475, 479 (S.D.N.Y. 2007) (holding that plaintiff's failure to "identify which privilege is being asserted" constituted a waiver); Carte Blanche (Singapore) PTE., Ltd. v. Diners Club Int'l, Inc., 130 F.R.D. 28, 32 (S.D.N.Y. 1990) (finding that "fail[ure] to specify work product as the particular privilege protecting [] various documents . . . waived work product immunity for the documents"); Fed. R. Civ. P. 26(b)(5) (listing requirements for privilege logs). "Just as the party seeking to assert a claim of privilege bears the burden of establishing the existence of the privilege, that same party has the burden of establishing nonwaiver." Granite Ptrs., L.P. v. Bear, Stearns & Co., 184 F.R.D. 49, 54 (S.D.N.Y. 1999). Courts in this District have noted that "only 'flagrant' violations of these rules should result in a waiver of privilege." Dey, L.P. v. Sepracor, Inc., No. 07 Civ. 2353 (JGK) (RLE), 2010 WL 5094406, at *2 (S.D.N.Y. Dec. 8, 2010); see Chevron Corp. v. Donziger, No. 11 Civ. 0691 (LAK) (JCF), 2013 WL 4045326, at *3 (S.D.N.Y. Aug. 9, 2013) (finding that insufficiently detailed descriptions of documents to support the assertion of privilege did not waive privilege); Pem-Amer., Inc. v. Sunham Home Fashions, LLC, No. 03 Civ. 1377 (JFK) (RLE), 2007 WL 3226156, at *2 (S.D.N.Y. Oct. 31, 2007) (finding that tardy privilege log did not waive privilege).

The work product protection is not absolute, however. "A finding that a document was prepared 'because of the prospect of litigation . . . does not necessarily mean that the document will be protected against discovery,' but instead that the 'document is eligible for work-product' protection." Brook, 2021 WL 5919207, at *5 (quoting Adlman, 134 F.3d at 1202–03). Pursuant

to Federal Rule of Civil Procedure 26(b)(3)(A), "work product materials are discoverable if (i) they are otherwise discoverable under Rule 26(b)(1), and (ii) the party seeking them shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Rackwise, Inc. v. Foley Shechter Ablovatskiy, LLP, No. 19 Civ. 11094 (AT) (SLC), 2020 WL 7342743, at *8 (S.D.N.Y. Dec. 14, 2020) (quoting Rule 26(b)(3)(A)). "A substantial need exists 'where the information sought is essential to the party's defense, is crucial to the determination of whether the defendant could be held liable for the acts alleged, or carries great probative value on contested issues.'" Gucci, 271 F.R.D. at 74–75 (quoting Nat'l Cong. for Puerto Rican Rts. v. City of New York, 194 F.R.D. 105, 110 (S.D.N.Y. 2000)). "Even when a showing of substantial need has been made, the court must 'protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.'" Brook, 2021 WL 5919207, at *5 (quoting Fed. R. Civ. P. 26(b)(3)(B)).

**B. Application**

Applying these standards, the Court has conducted an in camera review and reaches the following conclusions.

**1. The H&M Exemplars**

Although the H&M Defendants assert that each of the Exemplars "is protected by the attorney-client privilege, the work-product doctrine, or both[,]" (Dkt. No. 138 at 1), the H&M Log does not specify which privilege applies to each Exemplar, but rather only that they are all protected "by the common interest privilege." (Dkt. No. 138-2). As noted above, however (§ III.A.1.a, supra), the common interest privilege is not a separate privilege but an exception that

precludes a finding of waiver of a privilege where the parties' communications are "in the course of formulating a common legal strategy" rather than a commercial interest. Sokol, 2008 WL 3166662, at *5. To the extent that the H&M Defendants also invoke the functional equivalent doctrine, that doctrine similarly operates to preclude a finding of waiver when a client includes a consultant on otherwise privileged communications. See Walsh, 544 F. Supp. 3d at 392. (See § A.III.b, supra).

Although the H&M Defendants' legal analysis is sparse, they seem to argue that Monahan's presence on the Exemplars does not operate as a waiver of the attorney-client privilege or work product protection because he either shared a common interest with the BFG Defendants or was the functional equivalent of an employee of the BFG Defendants. (See Dkt. No. 138 at 1–2). The H&M Defendants provide little substance as to the applicability of the attorney-client privilege or the work-product protection to the Exemplars, and the H&M Log does not even indicate which privilege they contend applies to each Exemplar in the first instance. (Dkt. No. 138-2). We need not parse through each Exemplar to guess which privilege the H&M Defendants are invoking, however, because, as set forth below, we find that the H&M Defendants have failed to demonstrate that Monahan shared a common interest with the BFG Defendants or was the functional equivalent of an employee of the BFG Defendants. In other words, even if the attorney-client privilege or the work-product protection applied,[6] those

[6] We are skeptical about this threshold predicate for many of the H&M Exemplars in any event. For example, Exemplar 002477 is a communication from Monahan to an individual at "Novapath Funding," whose identity and role the H&M Defendants do not explain, so we cannot find that either privilege would apply. Exemplar 002511 represents Monahan attempting to schedule a call with a BFG employee — we discern no attorney-client privileged or work-product in this communication. Exemplar 002572 shows Monahan providing BFG employees with the template to use for communicating with merchants, and so clearly was not confidential.

privileges have been waived because neither the common interest exception nor the functional equivalent doctrine applies to prevent waiver.

a. **Common interest exception**

Even if we are wrong and the attorney-client privilege or work-product protection applies to any of the Exemplars, for the reasons set forth below, the common interest doctrine does not apply.

The question whether the common interest exception applies to any of the Exemplars requires the Court first to assess the relationship between Monahan and the BFG Defendants. See Monterey Bay, 2023 WL 315072, at *11. Despite repeated references on the H&M Log to "common interest," (Dkt. No. 138-2), the BFG Defendants do not specify any common legal interests Monahan shared with them. (See Dkt. No. 138). To support their argument, they have submitted only the Harney Agreement and reference BFG's "merchant collection strategy." (Dkt. Nos. 138 at 2; 138-1). They have not submitted a declaration from Monahan or anyone at BFG describing a common legal interest, any common interest agreement between the H&M Defendants and the BFG Defendants, or any other evidence, and thus have "failed to carry [their] burden of demonstrating the applicability of the common interest doctrine." In re Rivastigmine, 2005 WL 2319005, at *5; see Monterey Bay, 2023 WL 315072, at *12 (finding that because plaintiffs provided only a single contract without any declarations or other evidence, they failed to satisfy their evidentiary burden to show that common interest doctrine applied); Gulf Is., 215 F.R.D. at 473 (finding that defendant failed to submit deposition testimony supporting existence of common interest privilege).

In addition, the Harney Agreement does not satisfy the H&M Defendants' evidentiary burden. That document shows that the BFG Defendants engaged the H&M Defendants, specifically, Monahan, to provide the Services. (Dkt. No. 138-1). But simply demonstrating an affiliation "does not excuse a party from demonstrating the applicability of the common interest rule." Gulf Is., 215 F.R.D. at 474. The Harney Agreement reflects an effort to liquidate BFG and efficiently collect its assets, but that is a venture that "is commercial in nature and does not qualify for protection under the common interest rule." Id. at 473; see Monterey Bay, 2023 WL 315072, at *12 (finding that agreement reflecting project funding did not demonstrate applicability of common interest doctrine). Further, the Harney Agreement provides that the BFG Defendants were to pay the H&M Defendants' hourly rates and does not suggest that the H&M Defendants would share in the BFG Defendants' collections or other recoveries in the liquidation process, demonstrating that the H&M Defendants and the BFG Defendants did not "have an identical legal interest, as required" for the common interest doctrine to apply. SR Int'l Bus. Ins. Co., 2002 WL 1334821, at *4; see Bank of Am., N.A. v. Terra Nova Ins. Co., 211 F. Supp. 2d 493, 497 (S.D.N.Y. 2002) (finding no common interest where parties had different roles and obligations under agreement). The H&M Defendants' entitlement to fees under the Harney Agreement is not a sufficient ground to find that the common interest doctrine applies. See In re Rivastigmine, 2005 WL 2319005, at *4 (noting that "economic rights, standing alone, are generally not sufficient to support application of the common interest doctrine"); Terra Nova, 211 F. Supp. 2d at 497 (finding that fee payment requirement "provide[d] further evidence of the divergence of interests between the parties" such that common interest doctrine did not apply). In any event, even if we could find that the H&M Defendants and the BFG Defendants shared an

interest in BFG's efficient liquidation, that desire was "simply a commercial concern." Johnson Matthey, Inc. v. Rsch. Corp., No. 01 Civ. 8115 (MBM) (FM), 2002 WL 1728566, at *6 (S.D.N.Y. July 24, 2002), reconsideration granted in part on other grounds, 2002 WL 31235717 (S.D.N.Y. Oct. 3, 2002); see Terra Nova, 211 F. Supp. 2d at 497 (explaining that "the mere fact that the parties were working together to achieve a commercial goal cannot by itself result in an identity of interest between the parties"). Finally, having reviewed the Exemplars, as detailed above (see § III.B, supra), we find that they do not "provide sufficient detail to demonstrate common interest." Monterey Bay, 2023 WL 315072, at *12.

Accordingly, we find that the H&M Defendants have not met their evidentiary burden to show that the common interest doctrine applies.

**b. Functional equivalent doctrine**

We reach a similar conclusion as to the H&M Defendants' assertion that Monahan was the functional equivalent of an employee of the BFG Defendants. Even if the Harney Agreement indicated that Monahan had "a key corporate job" for the BFG Defendants based on his involvement in collections, the first Walsh factor, 544 F. Supp. 3d at 392, the purpose of the "close working relationship" he had with the BFG Defendants — the second Walsh factor — "was to effectuate a business transaction[,]" i.e., to execute BFG's liquidation efficiently. Id. at 393; see Exp.-Imp. Bank, 232 F.R.D. at 114 (noting that if the functional equivalent doctrine "were extended to every situation where a financial consultant worked exhaustively to guide a company through a restructuring deal, the exception would swallow the basic rule"). That the BFG Defendants might bring litigation relating to any uncollected assets "in the future does not alter the analysis [because] [t]he same can be said of almost any complex corporate business

transaction." Walsh, 544 F. Supp. 3d at 393. Third, even if Monahan were an expert — which the Court cannot find given that the H&M Defendants have not provided his resume or biographical information — they have not detailed what information Monahan possessed that no one else at the BFG Defendants "would not have possessed or could not have developed on their own." Id. Fourth, the H&M Defendants do not detail any decisions Monahan "made independently." Monterey Bay, 2023 WL 315072, at *15; see Walsh, 544 F. Supp. 3d at 393.

As to the fifth and sixth Walsh factors, some of the Exemplars show Monahan communicating with third parties, including BFG's Counsel. (Exemplars 002287, 002477). See Walsh, 544 F. Supp. 3d at 393. But the H&M Defendants have not demonstrated that Monahan "solicited legal advice" from the BFG Defendants' counsel. Id. At most, Exemplar 002287 shows Monahan relaying to Golenbock the substance of a discussion with Plaintiffs — which would not be privileged — but the attorney-client privilege does not protect disclosure of non-privileged information to an attorney. See Bennett v. Cuomo, No. 22 Civ. 7846 (VSB) (SLC), 2024 WL 80271, at *6 (S.D.N.Y. Jan. 8, 2024) (noting "that the attorney-client privilege protects communications, not underlying facts"); see Putnam at Tinton Falls, LLC v. Annunziata, No. 20 MC 281 (NSR), 2021 WL 5919418, at *3 (S.D.N.Y. Dec. 15, 2021).

Ultimately, the H&M Defendants have demonstrated fewer than half of the Walsh factors, and so have not established that Monahan was "the functional equivalent or de facto employee of [the BFG Defendants.]" Walsh, 544 F. Supp. 3d at 393; see Monterey Bay, 2023 WL 315072, at *15 (finding that functional equivalent doctrine did not apply where plaintiffs failed to demonstrate Walsh factors). By including Monahan on the H&M Exemplars, then, any applicable privilege has been waived, and the H&M Exemplars are not protected by any privilege and must

be produced to Plaintiffs. The H&M Defendants shall review the H&M Log and produce all additional documents in accordance with the Court's rulings as to the H&M Exemplars.

**2. The BFG Exemplars**

Plaintiffs assert that the BFG Defendants have failed to identify the client(s), attorney(s), subject of the legal representation, or the basis for asserting confidentiality. (Dkt. No. 133 at 1–2). The BFG Defendants respond that the BFG Exemplars "involve communication between the BFG Defendants and their attorneys for the purpose of obtaining legal advice[,]" including with respect to the BFG Defendants' relationship to Plaintiffs and collection of defaulted accounts. (Dkt. No. 141 at 2). The BFG Defendants have provided an updated privilege log in which they identify, for each communication, the client(s), the attorney(s), and the subject of the communication. (Dkt. No. 141-1). The BFG Defendants have also withdrawn the privilege designation as to four of the Exemplars, which they have agreed to produce. (Dkt. No. 141 at 2).

The Court has reviewed in camera the remaining 16 Exemplars and finds that, as to each, the BFG Defendants have adequately demonstrated that they are communications between a client and an attorney for the purpose of seeking or providing legal advice and therefore are protected by the attorney-client privilege. See Monterey Bay, 2023 WL 315072, at *17 (finding certain document reflecting employee's request for legal advice from outside attorney was protected by attorney-client privilege). The Court also finds that the BFG Log is sufficiently detailed in compliance with Rule 26(b)(5)(A)(ii) to demonstrate that the BFG Defendants' privilege assertions are justified. See Cooling Water Intake Structure Coal. v. U.S. Envnt'l Prot. Ag., 905 F.3d 49, 65 n.9 (2d Cir. 2018) (upholding privilege assertion where privilege log

adequately described documents and nature of privilege); Orenshteyn v. Int'l Bus. Mach. Corp., No. 02 Civ. 5074 (JGK) (RLE), 2013 WL 208902, at *1 (S.D.N.Y. Jan. 15, 2013) (same).

Accordingly, the BFG Defendants are not required to produce the 16 Exemplars or any of the other documents on the BFG Log.

## IV. CONCLUSION

For the reasons set forth above, the Court orders:

(1) Plaintiffs' H&M Request is **GRANTED** as follows:

a. The H&M Exemplars are not protected by any privilege and must be produced to Plaintiffs.

b. The H&M Defendants shall review the H&M Log and produce any additional documents in accordance with the Court's ruling as to the H&M Exemplars (the "Supplemental H&M Production").

c. Following the H&M Defendants' production of the H&M Exemplars and the Supplemental H&M Production Plaintiffs and the H&M Defendants shall meet and confer to confirm that the appropriate documents have been produced in accordance with this Opinion and Order. By **November 24, 2026**, Plaintiffs and the H&M Defendant shall file a joint status letter.

(2) Plaintiffs' BFG Request is **DENIED** and the BFG Defendants are not required to produce the BFG Exemplars or any other documents on the BFG Log.

Dated: New York, New York
November 10, 2026

**SARAH L. CAVE**
**United States Magistrate Judge**